UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DUARTE BARCIA,
Petitioner,
v.
MARRERO, et al.,
Respondents.

Case No.: 26cv4163-LL-DDL

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

[ECF No. 1]

Before the Court is Petitioner Argel Noel Duarte Barcia's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Response. ECF No. 4 ("Ret."). For the reasons set forth below, the Court **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** an immediate release.

## I. BACKGROUND

Petitioner is a citizen of Nicaragua. Pet. ¶ 1. On June 15, 2024, Petitioner entered the United States via Miami International Airport after the Department of Homeland Security ("DHS") authorized Petitioner's travel under the Nicaragua humanitarian parole process. *Id.* ¶¶ 1–2. He presented himself for inspection and was paroled into the United States. *Id.* ¶ 2. According to Petitioner, his parole was valid until June 12, 2025. *Id.* Respondents agree that "Petitioner was previously released from immigration custody on

parole issued under 8 U.S.C. § 1182(d)(5)" but that they "have insufficient information regarding termination of that parole." Ret. at 2.

On May 18, 2026, Petitioner was taken into Immigration and Customs Enforcement ("ICE") custody. Pet. ¶ 3. According to Petitioner, ICE "did not provide advance notice, a hearing before a neutral decisionmaker, or a determination that changed circumstances made confinement necessary." *Id*. On July 21, 2026, Petitioner filed the instant Petition alleging DHS violated the Fifth Amendment's Due Process Clause. *Id*. ¶¶ 29–37.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

## III. DISCUSSION

Immigration officials may parole certain noncitizens into the United States "temporarily under such conditions [immigration officials] may prescribe . . . for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). DHS's implementing regulations provide that parole is automatically terminated without written notice at the expiration of the time for which parole was authorized. 8 C.F.R. § 212.5(e)(1)(ii). Here, Petitioner does not dispute that his parole expired on June 12, 2025 (Pet. ¶ 2), and Respondents state that they "have insufficient information regarding termination of that parole" (Ret. at 2). Nevertheless, Petitioner claims that his detention, even after his parole expired, "without notice and a meaningful opportunity to be heard"

violated the Fifth Amendment's Due Process Clause. *See* Pet. ¶¶ 29–40. Respondents do not address this constitutional claim. *See generally* Ret.

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

Indeed, the expiration of parole does not extinguish a petitioner's entitlement to due process. *See Quiroz, v. LaRose*, No. 26-CV-866 JLS-DEB, 2026 WL 673822, at *2 n.1 (S.D. Cal. Mar. 10, 2026) (rejecting Respondents' argument that "because Petitioner's parole expired after a year, any due process arguments are foreclosed") *see also Astafev v. Warden, Otay Mesa Detention Ctr.*, No. 3:26-CV-00313-RBM-AHG, 2026 WL 654247, at *4 (S.D. Cal. Mar. 9, 2026) ("That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized hearing prior to re-detaining the parolee."); *Osaretin v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-3612-JES-MSB, 2026 WL 280077, at *2 (S.D. Cal. Feb. 3, 2026) ("Courts have repeatedly held that liberty interests do not expire when parole does."); *see also D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026); *Omer G. G. v. Kaiser*, No. 1:25-CV-

01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136–37 (W.D. Wash. 2025); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179 (D. Nev. 2025).

Accordingly, the Court finds that Petitioner has a protected liberty interest in remaining out of custody even after his parole expired. Upon arrival, he was released on humanitarian parole after he was determined not to be a danger to the community or a flight risk. There is no evidence that this determination has changed since Petitioner's arrival. *See, e.g., Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."). And though his parole expired approximately one year before his detention, Respondents offer no evidence that during that time officials tried to detain Petitioner. Thus, Petitioner justifiably continued to rely on and take advantage of his continued freedom.

Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that Petitioner's detention without notification, reasoning, or an opportunity to be heard denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after

that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high. After the initial determination that Petitioner should be released on parole because he posed no danger to the community and was not a flight risk, Respondents have not produced any argument or evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). There is no indication that Petitioner has failed to abide by the conditions of his release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC), 2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a

hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025))).

Therefore, because Respondents detained Petitioner by revoking his release without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful). The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori v. LaRose*, 807 F. Supp. 3d 1156, 1163–66 (S.D. Cal. 2025) (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

Accordingly, the Court **GRANTS** Petitioner's Petition.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus and **ORDERS** Respondents to immediately release Petitioner from custody subject only to the conditions of his preexisting parole.

**IT IS SO ORDERED.**

Dated: August 7, 2026

Honorable Linda Lopez
United States District Judge